**Andrew Joseph Jr: SCHNEIDER, Plaintiff,**

v.

**The Hon. Leo F. SCHLAEFER, The Hon. Richard T. Becker, District Attorney David C. Resheske, Asst. District Attorney Peter J., Cannon, Asst. District Attorney Holly L. Murphy, Washington County, Inc., Washington County Sheriff John G. Theusch, West Bend Chief of Police James Schwartz, P.O. Daniel Bertler, P.O. Zell and St. David N. Rettler, Defendants.**

No. 97–C–297.

United States District Court, E.D. Wisconsin.

Aug. 8, 1997.

Andrew Joseph Schneider, Jr., Allenton, WI, pro se.

James H. McDermott, Wisconsin Dept. of Justice, Office of the Atty. Gen., Madison, WI, for Leo F. Schlaefer, Richard T. Becker, David C. Resheske, Peter J. Cannon, Holly L. Murphy.

Charles H. Bohl, M. Elizabeth O'Neill, Whyte Hirschboeck Dudek, Milwaukee, WI, for Washington County, John G. Theusch.

Gregg T. Heidenreich, Stilp & Cotton, Milwaukee, WI, for James Schwartz, Daniel Bertler, Officer Zell, David N. Rettler.

## DECISION AND ORDER

RANDA, District Judge.

This matter comes before the Court on motions to dismiss filed by each of the several defendants herein, and on plaintiff's motion for a default judgment. For the following reasons, plaintiff's motion is denied, defendants' motions are granted, and the case dismissed.

## I

The plaintiff, who refers to himself as Andrew Joseph jr.: Schneider (hereinafter, "Schneider"), has had at least two run-ins with the West Bend Police Department for offenses unknown. These run-ins have led to Schneider's incarceration in the Washington County Jail, under the apparent administration of the Washington County Sheriff's Department, and to court proceedings involving various district attorneys and judges of Washington County. Such inconveniences have, in turn, prompted Schneider to file a complaint in federal court against anyone even remotely involved in his various arrests, incarcerations and court proceedings, including his arresting officers, the author of his criminal complaint, the Chief of Police, the County Sheriff, the County itself, the prosecuting district attorneys, and the presiding county judges. The complaint is a confusing narrative of legal jargon generally incomprehensible to the Court and counsel alike. That said, it is a form of jargon regrettably familiar to this Court and other federal courts around the country, for such has become the trademark of litigants suing under the so-called "American flag of peace". Though the facts of cases like these will vary, they all turn upon the same underlying theme, wherein the plaintiff contests the jurisdiction of various state court proceedings,

**1162**

or the validity of certain state law enforcement efforts, because the same were purportedly taken under the "maritime flag of war" as opposed to the aforementioned "American flag of peace". *See, e.g., McCann v. Greenway,* 952 F.Supp. 647 (W.D.Mo.1997) and cases cited therein; *Jones v. Watson,* 1997 WL 162990 (N.D.Ohio 1997); *Goode v. Foster,* 1996 WL 740707 (D.Kan.1996); *Leverenz v. Torluemlu,* 1996 WL 341468 (N.D.Ill.1996); *Hovind v. Kelly,* 1997 WL 327100 (N.D.Fla.1997). The difference between the two flags is cosmetic: The so-called maritime flag of war contains yellow fringe around the flag itself and has a golden eagle sitting atop the standard; the American flag of peace does not.

Schneider's lawsuit is more of the same. Like many such litigants, Schneider pastes an "American flag of peace" to the front page of his complaint, presumably in an effort to invoke and tie the Court's jurisdiction to said flag. *See, e.g., McCann,* 952 F.Supp. at 649. Though the complaint itself is extremely difficult to comprehend, a time-line of sorts can be gleaned therefrom. It appears that Schneider was first arrested on June 21, 1996 by officers of the West Bend Police Department. (Complaint at ¶ 1.) That same day he was incarcerated at the Washington County Jail by officers of the Washington County Sheriff's Department. (Complaint at ¶ 2.) Schneider was subsequently released upon paying $300.00 bail, which he now characterizes as a "ransom" to end his "kidnaping". (Complaint at ¶ 3.) On October 21, Sergeant Ritter of the West Bend Police Department filed a criminal complaint against Schneider. (Complaint at ¶ 4.) On December 30, Judge Leo Schlaefer of Washington County Circuit Court entered a plea on Schneider's behalf. (Complaint at ¶ 5.) On January 16, 1997, Judge Schlaefer issued a warrant for Schneider's arrest. (Complaint at ¶ 7.) On March 15, Schneider was arrested, presumably pursuant to the January 17 warrant, and incarcerated once again in the Washington County Jail. (Complaint at ¶ 8.) On March 17, the officers of the Washington County Sheriff's Department escorted Schneider to a hearing before Judge Richard T. Becker of the Washington County Circuit Court, wherein Judge Becker set bail and a trial date. (Complaint at ¶ 9.) Assistant District Attorney Holly Murphy represented Washington County at that hearing. (*Id.*)

The rest of Schneider's complaint is a rambling collection of legal jargon consisting of repeated and unexplained references to various federal statutes and conclusory allegations of "fraud", "conspiracy", "breach of the contract to uphold the oath and affirmation to support the constitution", "neglect of due process", "perjury", "constructive treason", "attempting by overt acts to overthrow the government of the state to which the alleged offender owes allegiance", "betraying the state into the hands of a foreign power", "mutilation of the American flag", "lack of disclaimer contract", "neglect to stop this jurisdictional wrong", "deprivation of rights", "obstruction of justice", "extortion", "acts of piracy", etc. Underlying and motivating this mountain of charges is a single factual allegation: All of the actions taken by the defendants were done in uniforms bearing, or courtrooms displaying, the ersatz "flag of war" as opposed to the "American flag of peace". According to Schneider, this single fact renders his arrests, his incarcerations, his payment of bail, his arrest warrant, and all of his court proceedings unconstitutional, because the same were conducted under the authority of a foreign power lacking a constitution, contrary to the oaths and affirmations of defendants' respective offices.[1] Defen-

---

**1.** A sampling of Schneider's allegations should provide sufficient flavor:

Plaintiff accuses the officers of the court of perjury of oath and affirmation of office in the official capacity and enriched by this county and this state in respondents private capacity. The officers of the court swear to support the [ ] constitution of the united [sic] States of America. When the officers of the court breach the oath and affirmation with the will of intent, the "will" (being the condition of the

mind). Constructive treason against the constitution of the united [sic] States of America defined pursuant to Black's Law Dictionary giving cause to the offense of attempting by overt acts to overthrow the government of the state to which the alleged offender owes allegiance and of betraying the state into the hands of a foreign power. Where by the [judge] is the fiduciary (SRC 60.07) of the court and responsible for the colors of the flag. The mutilation (title 4 U.S.C. § 3) of title

dants, of course, move to dismiss the case as baseless and incomprehensible. In response, Schneider moves for default judgment, alleging that "first the court must support the jurisdiction of the American flag of peace ... before any type of action can be taken with the plaintiff", and further that defendants' motions constitute a "non-joinder under the common law title 4 U.S.C. § 1 American flag of peace F.R.C.P 12(b)(7)", thereby justifying the entry of default judgment. (Schneider Response at ¶¶ 8–9.)

## II

■ Not surprisingly, there are several reasons why Schneider's allegations fail to state a claim upon which relief can be granted. The most obvious of these is his mistaken belief that the type of flag displayed on an officer's uniform, or in a judicial courtroom, somehow affects the constitutional validity of the actions taken by that officer or in that courtroom. Perhaps this belief is unwittingly fostered by the many federal courts that dismiss such cases on grounds other than the absurdity of the underlying claim, an understandable approach given the difficulty of addressing claims so preposterous. For that very reason, however, it is occasionally useful for a court to address these claims head on, so as to serve notice upon future litigants that they tilt at such windmills at their peril.

Fortunately, Judge Whipple of the Western District of Missouri has done just that, in language which the Court will quote at length for the benefit of Schneider and other litigants like him who may seek such relief from the courts of the Eastern District of Wisconsin:

The issue before the Court is whether action taken by a state court during a child custody hearing while the court's flag is adorned with gold fringe idly hanging or a gold eagle vigilantly peering atop the flagpole somehow violates a litigant's rights under [the] United States Constitution, and whether the Defendants, various child welfare workers, the state child welfare agency, the adverse litigant's counsel and his law firm, are liable for sitting mute without protest or action to cure. Before issuing its ruling, the Court must disclose that its courtroom and chambers each sport an American flag with gold fringe and a gold eagle atop the respective flagpoles. The Court declines to recuse itself, however, for reasons that become obvious below.

Other Courts have considered Mr. McCann's argument or arguments similar in nature or effect. Those courts have labeled the position as "frivolous", "totally frivolous", "preposterous", and "a ... really unintelligible assertion[ ]". This Court

4 U.S.C. § 1 American Flag of Peace of the united [sic] States of America and title 36 chapter 10 section 175 (c,d,e,f,g,h,i,j) and title 36 chapter 10 section 176 (a,j,g), of the United States Codes for the title 4 U.S.C. § 1 flag to placing a foreign yellow fringe around the regulation size American flag (title 4 U.S.C. § 1) making the flag a foreign entity not supported by any constitution in the world. This is the mutilation of the American flag! Information: Under the military American flag = Army Regulation 840–10 chapter 8 for all military jurisdiction display: The standard or pole is topped by a yellow ball for outside display at military recruiting centers only, the yellow swear for military court marshals, the yellow braid is for regimental colors and the gold eagle is for the president of the united [sic] States only. The placement of yellow fringe on a title 4 U.S.C. § 1 American flag is mutilation and is not representative of any county or constitution in the world creating a foreign power under the law of the flag within the sanctuary of the bar. The sanctuary is neutral foreign territory controlled by the law of the

flag. Any flag not the title 4 U.S.C. § 1 American Flag of Peace will deny the U.S.A. [sic] proper party of all u.s. of A. [sic] constitutional rights without the due process of law. A proper party is injured by fraud F.R.C.P. 9(b) because the actor judge is the supreme ruler of a foreign power jurisdiction without a constitution. The constitution of the united [sic] States of America would have protected the proper party before the court. No disclaimer contract of the will of intent was presented to the proper party before entering the bar, henceforth by definition, constructive treason.

\* \* \* \* † \*

Plaintiff states: Without due process pursuant to the 4th and 5th A.u.S.C. [sic] the West Bend Police and the Washington Sheriff Department with the gold fringe flag on the uniform causing a deprivation of rights by unwarranted arrest and the collection of ransom (title 18 U.S.C. § 1202) are committing acts of piracy (title 1 8 U.S.C. § 1661) and the officers of the court are willing co-conspirators. (Complaint at ¶¶ 13, 17.)

agrees. But in the interest of killing this argument for good, and to facilitate appellate review, the Court will examine the law of the flag.

The United States Code provides that "[t]he flag of the United States shall be thirteen horizontal stripes, alternate red and white; and the union of the flag shall be forty-eight stars, white in a blue field", 4 U.S.C. § 1, with one star added for each additional state, 4 U.S.C. § 2. In the 1920s, Army Regulation 260–10 required troops in the field to fly flags with a yellow silk fringe. See 34 Op.Att'y Gen. 483, 484–85 (1 925). The Adjutant General of the Army believed that

> [t]he War Department ... knows of no law which either requires or prohibits the placing of a fringe on the flag of the United States. No Act of Congress or Executive order has been found bearing on the question. In flag manufacture a fringe is not considered to be a part of the flag, and it is without heraldic significance. In the common use of the word it is a fringe and not a border. Ancient custom sanctions the use of fringe on the regimental colors and standards, but there seems to be no good reason or precedent for its use on other flags.

*Id.* at 485 (quoting an untitled circular of the Adjutant General dated Mar. 28, 1924). The United States Attorney General concurred, noting that the presence of a fringe on the flag "can not be said to constitute an unauthorized addition to the design prescribed by statute". *Id.* The President may, however, determine whether the Army or Navy display or remove fringes from their flags or standards. *Id.* at 485–86. The latest effective executive order, signed by President Eisenhower, himself a military man, did not address this issue. See Executive Order No. 10834, 24 Fed. Reg. 6865 (1959), reprinted in 4 U.S.C.A. § 1 notes (1985).

Therefore, Mr. McCann's claims against the above-listed Defendants must be dismissed because his factual predicate is in-

correct as a matter of law. Even if the Army or Navy do display United States flags surrounded by yellow fringe, the presence of yellow fringe does not necessarily turn every such flag into a flag of war. Far from it: in the words of the Adjutant General of the Army, "[i]n flag manufacture a fringe is not considered to be a part of the flag, and it is without heraldic significance." 34 Op.Att'y Gen. at 485. If fringe attached to the flag is of no heraldic significance, the same is true a fortiori of an eagle gracing the flagpole.

Nor are the fringe or the eagle of any legal significance. Even were Mr. McCann to prove that yellow fringe or a flagpole eagle converted the state court's United States flag to a maritime flag of war, the Court cannot fathom how the display of a maritime war flag could limit the state court's jurisdiction to take his child away from him. Jurisdiction is a matter of law, statute, and constitution, not a child's game wherein one's power is magnified or diminished by the display of some magic talisman.

*McCann*, 952 F.Supp. at 650–51 (citations and footnotes omitted). Accordingly, Schneider's claims must be dismissed, and from this day forward litigants in the Eastern District of Wisconsin are put on notice that any claims or defenses based upon the alleged preeminence of the American flag of peace over any other flag are frivolous and sanctionable.[2]

■ Other reasons exist for the dismissal of Schneider's claims. First, it is well-established that a litigant who claims an underlying state court conviction was obtained through unconstitutional conduct must first have his conviction overturned on those grounds through a federal or state habeas petition before he may seek damages under § 1983. *Bell v. Peters*, 33 F.3d 18, 19 (7th Cir.1994), *citing Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). While it is unclear from the complaint whether Schneider was eventually convicted of an

---

**2.** The meritless nature of Schneider's reliance on the distinctions between the various types of flags is also dispositive of his motion for default judgment, based on the erroneous belief that defen-

dants' motions fail to join issue because they fail to first recognize the jurisdiction of the American flag of peace.

offense, he certainly does not plead otherwise, nor does he plead that any conviction was subsequently overturned. Second, Schneider's claims against Judges Schlaefer and Becker are subject to dismissal on grounds of absolute judicial immunity, insofar as the conduct they are alleged to have taken fell within their jurisdiction and the scope of their judicial duties. *See Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Third, Schneider's claims against the district attorneys involved in his proceedings are subject to dismissal on grounds of absolute prosecutorial immunity, insofar as the conduct they are alleged to have taken fell within the scope of their prosecutorial duties and functions. *See Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Schneider's motion for default judgment is denied; and

2. Defendants' motions to dismiss are granted and the case dismissed.